# HOPEWELL-PILOT PROJECT, LLC

## INITIAL ADDITIONAL EQUITY SHARES

### SUBSCRIPTION AGREEMENT

THE OFFERING OF SECURITIES DESCRIBED HEREIN HAS NOT BEEN REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR UNDER ANY SECURITIES LAWS OF ANY STATE OF THE UNITED STATES OR ANY OTHER JURISDICTION. THIS OFFERING IS MADE PURSUANT TO REGULATION S OR REGULATION D UNDER SECTION 4(a)(2) OF SAID ACT, WHICH EXEMPTS FROM SUCH REGISTRATION CERTAIN TRANSACTIONS. FOR THIS REASON, THESE SECURITIES WILL BE SOLD ONLY TO INVESTORS WHO MEET CERTAIN MINIMUM SUITABILITY QUALIFICATIONS DESCRIBED HEREIN.

A PROSPECTIVE INVESTOR SHOULD BE PREPARED TO BEAR THE ECONOMIC RISK OF AN INVESTMENT IN THE COMPANY FOR AN INDEFINITE PERIOD OF TIME BECAUSE THE SHARES OR MEMBER'S INTERESTS HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OR THE LAWS OF ANY OTHER JURISDICTION, AND, THEREFORE, CANNOT BE SOLD UNLESS THEY ARE SUBSEQUENTLY REGISTERED OR AN EXEMPTION FROM REGISTRATION IS AVAILABLE. THERE IS NO OBLIGATION OF THE ISSUER TO REGISTER THE SHARES OR MEMBER'S INTERESTS UNDER THE SECURITIES ACT OR THE LAWS OF ANY OTHER JURISDICTION. TRANSFER OF THE SHARES OR MEMBER'S INTERESTS IS ALSO RESTRICTED BY THE TERMS OF THE AMENDED AND RESTATED COMPANY AGREEMENT RELATING THERETO.

# HOPEWELL-PILOT PROJECT, LLC

## A TEXAS LIMITED LIABILITY COMPANY

Hopewell-Pilot Project, LLC
c/o Willis Group
1400 Post Oak Blvd. Suite 200
Attention: Tom Tatham
Telephone: (713) 547-4531
E-mail: TTatham@HopewellTX.com

Ladies & Gentlemen:

This SUBSCRIPTION AGREEMENT (the "Agreement") is entered into as of the Closing Date specified on the signature page hereto by and among HOPEWELL-PILOT PROJECT, LLC, a Texas limited liability company (the "Company"), and the investor identified on the signature page hereto (the "Investor"). Investor seeks admission to the Company as a New Member and the acquisition of Shares representing Member's Interest in the Company (the "Interest") in accordance with the Company's Amended and Restated Company Agreement (the "Company Agreement"). Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Company Agreement.

**1. Capital Commitment.** In accordance with the terms of the Company Agreement and this Agreement, the Investor agrees to contribute to the Company the amount of capital specified under the heading "Capital Commitment" set forth on the signature page hereto, or such lesser amount as the Company shall accept as determined by the Company's Managers in their sole and absolute discretion.

**2. Adoption.** If the Investor is accepted as a New Member pursuant to paragraph 3 below, the Investor hereby agrees to adhere to and be bound by all terms and provisions of the Company Agreement and to perform all obligations therein imposed upon a New Member with respect to the Interest.

**3. Acceptance of Subscription; Delivery of Company Agreement.** The Investor understands and agrees that this subscription is made subject to the following terms and conditions:

(a) The Managers jointly reserve the right to review the suitability of any person desiring to acquire an Interest and, in connection with such review, to waive such suitability standards as to such person as the Managers jointly deem appropriate under applicable law;

(b) The Managers may accept or reject the Investor's subscription, in whole or in part, and the Investor's subscription shall be deemed to be accepted by the Managers only when both of the Company's Managers have executed Investor's Agreement and Investor has been admitted to the Company as a New Member in accordance with the terms of the Company Agreement;

(c) The Managers shall have no obligation to accept subscriptions in the order received;

(d) The Interest to be created on account of this subscription shall be created only in the name of the Investor, and the Investor agrees to comply with the terms of the Company Agreement

and to execute any and all further documents necessary in connection with becoming a New Member of the Company;

(e) The Investor hereby requests and authorizes the Managers to enter Investor's name on the Schedule of Members as holder of the Interest;

(f) The Investor has consulted to the extent deemed appropriate by the Investor with the Investor's own advisers as to the financial, tax, legal and related matters concerning an investment in Interests and on that basis believes that an investment in the Interests is suitable and appropriate for the Investor;

(g) The Investor is aware of and understands each of the risks and potential conflicts of interest inherent of an investment in the Company as set forth in the Memorandum;

(h) The Managers, acting jointly, may transfer proceeds into an account in the name of the Company, and in such event, the Managers shall not be liable for any losses arising from such transfer and shall be fully indemnified by the Company out of the assets of the Company to the fullest extent permitted by law for any and all actions, costs, claims, damages, demands or expenses (including any reasonable attorneys' fees) suffered or incurred by the Managers as a result of such transfer;

(i) The Investor hereby undertakes in respect of the Interest that the Investor: (i) shall comply with the restrictions on transfer of the Interest contained in the Company Agreement; and (ii) acknowledges and agrees that, in the event that Investor defaults on its capital contribution obligation to the Company, the Interest may be subject to forfeiture and other consequences as specified in the Company Agreement; and

(j) The Investor hereby declares that the Investor is not in the course of winding up or under liquidation or judicial management.

4. **Conditions to Closing.** The Company's obligations hereunder are subject to acceptance by the Managers of the Investor's subscription, and to the fulfillment at the time of, or prior to, the Closing Date of each of the following conditions:

(a) The representations and warranties of the Investor contained in this Agreement shall be true and correct as of the Closing Date; and

(b) All proceedings in connection with the transactions contemplated hereby and all documents and instruments incident to such transactions shall be satisfactory in substance and form to the Managers, and the Company shall have received all such counterpart originals or certified or other copies of such documents as the Managers may request.

The Investor's obligations hereunder are subject to the fulfillment at the time of, or prior to, the Closing Date of the following condition: an Amended and Restated Company Agreement of Title Rover, LLC reasonably acceptable to Investor.

5. **Investor Representations.** In connection with the Investor's acquisition of the Interest as of the Closing Date, the Investor makes the following representations and warranties on which the Managers and the Company are entitled to rely:

(a) The Interest will be held under the type of ownership identified on the signature page hereto.

**(b)** If the Investor has checked that the Investor is not a "U.S. Person," as such term is used in Internal Revenue Service Form W-9, under the subheading "Tax Jurisdiction" below, the Investor hereby represents, under penalties of perjury, that the Investor (i) is a "non-U.S. Person" (as defined below); (ii) will not transfer or deliver any interest in the Interests except in accordance with the restrictions set forth in the Company Agreement; (iii) will notify the Managers immediately if the Investor becomes a U.S. Person at any time during which the Investor holds or owns any Interests; (iv) is not subscribing on behalf of or funding its Capital Contribution with funds obtained from U.S. Persons; and (v) it was not in the United States at the time that the Interests were offered to it, and it was not in the United States at the time such offer was accepted; and (vi) it is not acting on behalf of, and it will not fund any portion of its subscription with assets of, any entity that is a "benefit plan investor" within the meaning of the United States Department of Labor Reg. Section 2510-101.3. For purposes of this section 5(b), a "non-U.S. Person" is an individual who is not a citizen or resident of the United States or a corporation, partnership, estate or trust which is not a U.S. entity. Except for offers and sales to discretionary or similar accounts held for the benefit or account of a non-U.S. person by a U.S. dealer or other professional fiduciary, all offers to sell and offers to buy the Interests were made to or by the Investor while the Investor was outside the United States and at the time that the Investor's order to buy the Interests was originated the Investor was outside the United States.

**(c)** The Investor is an "accredited investor" within the meaning of Regulation D of the U.S. Securities Act of 1933, as amended (the "Securities Act") and a "qualified client" as defined in the Investment Advisers Act of 1940, as amended, on the basis identified by checking the box adjacent to the applicable representation on *Schedule 2, Part 1* in the case of an individual investors and on *Schedule 2, Part 2* in the case of entity investors; and in the case of entity investors, represents to such further matters by checking the boxes adjacent to the applicable further representations on *Schedule 2, Part 2* (which checked representations in *Schedule 2, Parts 1 and 2* are hereby incorporated by reference). The Investor (i) is not subject to any of the "Bad Actor" disqualifications (each, a "Disqualification Event") described in Rule 506(d)(1) under the Securities Act and (ii) will, subsequent to the date hereof, notify the Company's Managers of (A) any Disqualification Event relating to the Investor not previously disclosed and (B) any event that would, with the passage of time, become a Disqualification Event relating to the Investor. The Investor is acquiring the Interest solely for the Investor's own account and not directly or indirectly for the account of any other person whatsoever for investment and not with a view to, or for sale in connection with, any distribution of the Interest. The Investor does not have any contract, undertaking or arrangement with any person to sell, transfer or grant a participation to any person with respect to the Interest. The Investor has such knowledge and experience in financial and business matters that the Investor is capable of evaluating the merits and risks of the investment evidenced by the Investor's acquisition of the Interest, and the Investor is able to bear the economic risk of such investment.

**(d)** No representations or warranties have been made to the Investor by the Company, the Company's Managers, or any agent thereof, other than as set forth in the Company Agreement, and this Agreement. The Investor has had access to such information concerning the Company as the Investor deems necessary to enable the Investor to make an informed decision concerning the acquisition of the Interest. The Investor has had access to the designated representatives of the Company, its Managers and the opportunity to ask questions of, and receive answers satisfactory to the Investor from, the Managers and or such designated representatives concerning the offering of Interests in the Company generally. The Investor has obtained all additional information requested by the Investor to verify the accuracy of all information furnished in connection with the offering of Interests in the Company.

**(e)** The Investor understands that the Interest has not been registered under the Securities Act, or any securities law of any state of the United States or any other jurisdiction in reliance on an exemption for private offerings, and the Investor acknowledges that it has received and carefully

-3-

read the Confidential Private Placement Memorandum of the Company (the "Memorandum"), the Company Agreement and this Agreement. The Investor understands that Doherty & Doherty LLP acts as counsel for the Company, the Company's Managers. No separate counsel has been retained to act on behalf of the Investors. No attorney-client relationship exists with any other person by reason of such person making an investment in the Company. The Investor has received and reviewed all such other information of the Company as the Investor or its representatives and advisers have requested.

(f)     The Investor is aware that the Investor must bear the economic risk of investment in the Interest for an indefinite period of time, possibly until final winding up of the Company, because the Interest has not been registered under the Securities Act, there is currently no public market therefor, and the Interest cannot be sold unless subsequently registered under the Securities Act or an exemption from such registration is available. The Investor understands that the Company is under no obligation, and does not intend, to effect any such registration at any time. The Investor also understands that sales or transfers of the Interest are further restricted by the provisions of the Company Agreement and, as applicable, securities laws of other jurisdictions and the states of the United States, and that the Interest will not be transferred or disposed of except in accordance with the terms of this Agreement, the Company Agreement and registration under the Securities Act, or pursuant to an applicable exemption therefrom.

(g)     The execution and delivery of the Company Agreement and this Agreement, the consummation of the transactions contemplated thereby and the performance of the obligations thereunder will not conflict with or result in any violation of or default under any provision of any other agreement or instrument to which the Investor is a party or any license, permit, franchise, judgment, order, writ or decree, or any statute, rule or regulation, applicable to the Investor.

(h)     The Investor has full power and authority to make the representations referred to in this Agreement, to acquire the Interest pursuant to this Agreement and the Company Agreement and to deliver the Company Agreement and this Agreement. The Company Agreement and this Agreement create valid and binding obligations of the Investor and are enforceable against the Investor in accordance with their terms, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, arrangement, moratorium or other similar laws affecting creditors' rights, and subject to general equity principles and to limitations on availability of equitable relief, including specific performance.

(i)     The Investor confirms that the Investor has been advised to consult with the Investor's attorney regarding legal matters concerning the Company and to consult with independent tax advisers regarding the tax consequences of investing in the Company. The Investor acknowledges that it understands that any anticipated United States federal or state income tax benefits may not be available and, further, may be adversely affected through adoption of new laws or regulations or amendments to existing laws or regulations. The Investor acknowledges and agrees that the Company has made no warranty or assurance regarding the ultimate availability of any tax benefits to the Investor by reason of the Investor's investment in the Company.

(j)     The Investor acknowledges and agrees that (i) information relating to the identity of the Investor shall appear on the Schedule of Members and may appear on the financial statements of the Company, and (ii) other Members shall receive such information and may share such information with their advisors and other parties pursuant to the terms of the Company's Confidentiality Agreement.

(k)     The Investor is knowledgeable and experienced in evaluating investments and experienced in financial and business matters and is capable of evaluating the merits and risks of investing in the Interests. The Investor has evaluated the risks of investing in the Interests, and has determined that the Interests are a suitable investment for the Investor. In evaluating the suitability of an

investment in the Interests, the Investor has not relied upon any representations or other information (whether oral or written) other than as set forth herein, in the Memorandum, the Company Agreement, the other agreements and independent investigations made by the Investor or representative(s) of the Investor. With respect to its investment in the Company, the Investor is not relying upon any other information, representation or warranty by the Company, the Managers of the Company or any designated representatives of the Company.

(l)     The Investor is aware and acknowledges that (i) the Company has limited or no significant operating history; (ii) there is no assurance of any income from an investment in the Company; (iii) any federal and/or state income tax benefits which may be available to the Investor may be lost through the adoption of new laws or regulations or changes to existing laws and regulations or differing interpretations of existing laws and regulations, in certain circumstances with retroactive effect; and (iv) the Investor, in making this investment, is relying, if at all, solely upon the advice of such Investor's personal tax advisor with respect to the tax aspects of an investment in the Company.

6.     **Company's and Manager's Representations.** The Company and the Company's Managers make the following representations and warranties on which the Investor and its counsel are entitled to rely:

(a)     The execution and delivery of the Company Agreement and this Agreement, the consummation of the transactions contemplated thereby and the performance of the obligations thereunder will not conflict with or result in any violation of or default under any provision of any other agreement or instrument to which the Company is a party or any judgment, order, writ or decree applicable to the Company.

(b)     No suit, action, claim, investigation or other proceeding is pending or, to the best of the Company's or the Manager's knowledge, is threatened in writing against the Company which questions the validity of the Company Agreement or this Agreement or any action taken or to be taken pursuant to the Company Agreement or this Agreement, or which could otherwise have a material adverse effect on the Company.

(c)     The Company Agreement and this Agreement create valid and binding obligations of the Company and are enforceable against the Company in accordance with their terms.

7.     **Trustee, Agent, Representative or Nominee.** If the natural person or entity completing this Agreement is acting as trustee, agent, representative or nominee for the Investor (such person or entity, the "Agent"), the Agent agrees that the representations, warranties and agreements made herein are made by such Agent (a) in respect of such Agent and (b) in respect of the underlying subscriber on whose behalf the Agent is acting. The Agent represents and warrants that such Agent has all requisite power and authority to execute this Agreement and perform the obligations under this Agreement on the underlying Investor's behalf. The Agent agrees to provide any additional documents and information that the Company reasonably requests relating to itself or the underlying Investor.

8.     **Survival of Agreements, Representations and Warranties; Indemnification.**

(a)     All agreements, representations and warranties contained herein or made in writing by or on behalf of the Investor, the Company or the Managers of the Company in connection with the transactions contemplated by this Agreement shall survive the execution of this Agreement and the Company Agreement, any investigation at any time made by the Investor, the Company or the Managers of the Company or on behalf of any of them and the sale and acquisition of the Interest and payment therefor.

(b)     The Investor acknowledges that the Investor understands the meaning and legal consequences of the representations and warranties made by the Investor herein. Such representations and warranties are complete and accurate, shall be complete and accurate as of the Closing Date and may be relied upon by the Company's Managers and the Company. If there should be any material change in any of the representations or warranties or other information regarding the Investor set forth herein, including at any time following the Closing Date, the Investor agrees to notify the Company's Managers in writing as promptly as reasonably practicable.

(c)     The Investor agrees that the foregoing representations and warranties, and all other information regarding the Investor set forth herein, may be used as a defense in any actions relating to the Company, the Managers of the Company or the private placement of the Interest, and that it is only on the basis of such representations, warranties and other information that the Company's Managers may be willing to accept this Agreement on behalf of the Company. The Investor acknowledges that the Company, and the Managers of the Company shall rely on such information, representations and warranties on an ongoing basis.

**9.     Binding Effect.** This Agreement shall be binding upon the Investor and the heirs, personal representatives, successors and assigns of the Investor. The Investor agrees that neither this Agreement nor any rights which may accrue to the Investor hereunder may be transferred or assigned without the consent of the Company's Managers, which may be granted or withheld in its sole discretion or otherwise as provided in the Company Agreement. This Agreement shall survive the admission of the Investor to the Company and shall, if the Investor consists of more than one person, be the joint and several obligations of all such persons.

**10.    Severability.** If any provision of this Agreement is held to be invalid or unenforceable in any jurisdiction, such provision shall be deemed modified to the minimum extent necessary so that such provision, as so modified, shall no longer be held to be invalid or unenforceable. Any such modification, invalidity or unenforceability shall be strictly limited both to such provision and to such jurisdiction, and in each case to no other. Furthermore, in the event of any such modification, invalidity or unenforceability, this Agreement shall be interpreted so as to achieve the intent expressed herein to the greatest extent possible in the jurisdiction in question and otherwise as set forth herein.

**11.    Confidentiality.** The Investor has carefully read the Company's Confidentiality Agreement and by execution thereof understands, including without limitation the confidentiality and non-solicitation undertakings set forth therein which shall apply to the Investor, whether or not this Agreement is accepted by the Company.

**12.    Counterparts.** his Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

**13.    Amendments.** Neither this Agreement nor any term hereof may be changed, waived, discharged or terminated orally, but only with the written consent of the Investor and the Company.

**14.    Governing Law.** The interpretation and enforceability of this Agreement and the rights and liabilities of the parties hereto shall be governed by the laws of the State of Texas. To the extent permitted by the Act and other applicable law, the provisions of this Agreement shall supersede any contrary provisions of the Act or other applicable law.

THE UNDERSIGNED INVESTOR HEREBY REPRESENTS THAT (I) THE UNDERSIGNED INVESTOR HAS CAREFULLY READ AND IS FAMILIAR WITH THIS AGREEMENT AND THE COMPANY AGREEMENT, (II) THE INFORMATION CONTAINED HEREIN IS COMPLETE AND ACCURATE AND MAY BE RELIED UPON, AND (III) THE EXECUTION OF THE FOLLOWING SIGNATURE PAGE SHALL CONSTITUTE THE EXECUTION OF THIS AGREEMENT AND THE COMPANY AGREEMENT BY THE INVESTOR IN THE EVENT THAT THE INVESTOR IS ADMITTED TO THE COMPANY AS A NEW MEMBER.

IN WITNESS WHEREOF, the undersigned has executed this Subscription Agreement as of this 29th day of September, 2016.

THE COMPANY:

HOPEWELL-PILOT PROJECT, LLC

By: THOMAS P. TATHAM
Its: Manager

BY: MARK A. WILLIS
Its: Manager

INDIVIDUAL INVESTOR:

_____
(Signature)

_____
(Signature)

_____
(Print Name As It Will Be Registered With This Investment)

ENTITY INVESTOR:
EnSource Investments LLC

By: _Justin Pannu_____

Name: __JUSTIN  PANNU_____

Title: __MANAGER_____

Closing Date:
(To be completed by the Company)

Capital Commitment: $530,000.00*
*$205,000.00 through exercise of convertible promissory note; $20,000 on or before September 30, 2016; $205,000 on or before October 28, 2016; $100,000 on or before December 31, 2016.

Please provide the following information:

| | | | |
|---|---|---|---|
| ☐ | Individual | ☐ | Irrevocable Trust |
| ☐ | Community Property | ☐ | Living Trust or Revocable Trust w/ ___ grantors. |
| ☐ | Partnership | ☐ | Corporation |
| ☐ | Limited Liability Company | ☐ | Other:_____. |

If the Investor is an entity, as of the Closing Date, there are four (4) holders of its outstanding securities (other than short-term paper) (*please fill in the blank specifying the number of beneficial owners*).

Primary contact person: __Justin Pannu__

Telephone Number: __(619) 318-2607__   Fax Number: _____

E-mail Address: __justinpannu1503@gmail.com__

- ■ Social Security or Taxpayer I.D. Number __81-3773197__
- ☐ U.S. Investor / U.S. Person
- ☐ Non-U.S. Investor / Foreign Person
- ☐ Exempt under Code Section 401(a)
- ☐ Exempt under Code Section 892
- ☐ Exempt under Code Section 501(c)3

Residential/Business Address (Domicile for Blue Sky filing purposes):

700 W. E Street, Unit 3804
San Diego, California 92101

Registered Address (if applicable):

Mailing Address *(select one)*:

[X]   Please use the Subscriber's Residential/Business Address as the Mailing Address

[ ]   Please use the Subscriber's Registered Address as the Mailing Address

[ ]   Please use the following as the Subscriber's Mailing Address:

**METHOD OF DELIVERY OF ACCOUNT COMMUNICATIONS.** Account Communications may be delivered via the e-mail address provided on this page. Should this means of transmission be unacceptable, Account Communications will be delivered via facsimile or physical delivery if the following box is checked:

☐ E-mail transmission is declined, please send Account Communications via facsimile or physical delivery

**For all account communications, please send via e-mail as well as physical delivery.**

IN WITNESS WHEREOF, this Amended and Restated Company Agreement has been entered into by the parties as of this 29th day of September, 2016.

THE COMPANY

HOPEWELL-PILOT PROJECT, LLC

By: *[signature: Thomas P. Tatham]*
MANAGER

By: *[signature]*
MANAGER

NEW MEMBERS

INDIVIDUAL:

By: _____

By: _____

Name: _____

ENTITY:

EnSource Investments LLC

By: *[signature: Justin Pannu]*

Name: JUSTIN PANNU

Title: MANAGER

*Signature Page to the Amended and Restated Company Agreement of*
*Hopewell-Pilot Project, LLC*

ANNEX 1

PART 1

**Individual Investor Representations.**

All defined terms have the meanings provided to them in the Agreement; the following representations are incorporated by reference into the Agreement.

The Investor makes the following representations regarding the Investor's status as an Accredited Investor and a Qualified Client *by checking the box adjacent to each representation below*:

☐ (a) Accredited Investor: The Investor is an individual and has a net worth, either individually or upon a joint basis with the Investor's spouse, that exceeds $1,000,000, excluding the net equity value of such individual's primary residence, if any, but including as a liability the amount by which any indebtedness secured by such residence exceeds the value of such residence (within the meaning of such terms as used in Rule 501 under the Securities Act),[1] *or* has had an individual income in excess of $200,000 for each of the two most recent years, or a joint income with the Investor's spouse in excess of $300,000 in each of those years, and has a reasonable expectation of reaching the same income level in the current year.

☐ (b) Qualified Client: The Investor is an individual that (i) has a net worth, together with assets held jointly with the Investor's spouse, of more than $2,000,000, excluding the net equity value of such individual's primary residence, if any, but including as a liability the amount by which any indebtedness secured by such residence exceeds the value of such residence (within the meaning of such terms as used in Rule 501 under the Securities Act),[2] or (ii) is a Qualified Purchaser.

---

[1] Any indebtedness secured by such primary residence that the Investor incurred within the 60 day period preceding the date of the sale of securities pursuant to this Agreement (other than indebtedness incurred as a result of the acquisition of the primary residence) will be included as a liability for purposes of this calculation, even if the total amount of indebtedness securing such primary residence does not exceed the value of such residence.

-1-

## ANNEX 1

### PART 2

**Entity Investor Representations.**

All defined terms have the meanings provided to them in the Agreement; the following representations are incorporated by reference into the Agreement.

The Investor makes the representations regarding the Investor's status as an Accredited Investor and a Qualified Client *by checking the box adjacent to the each representation below*:

**ACCREDITED INVESTOR REPRESENTATION** (*check the box adjacent to at least one applicable representation below*):

- ☐ (i) The Investor is a corporation, partnership, business trust or limited liability company, **not** formed for the purpose of acquiring an Interest, or an organization described in section 501(c)(3) of the Code, in each case with total assets in excess of $5,000,000.

- ☒ (ii) The Investor is an entity in which **all** of the equity owners (or *a living trust or other revocable trust* in which all of the grantors to such trust) qualify under Annex 1, Part 1, clause (a) or (b), or clause (i), (iii), (iv), (v) or this clause (ii) of this Annex 1, Part 2.

- ☐ (iii) The Investor is an employee benefit plan and *either* all investment decisions are made by a bank, savings and loan association, insurance company, or registered investment advisor, *or* the Investor has total assets in excess of $5,000,000 *or*, if such plan is a self-directed plan, investment decisions are made solely by persons who are Accredited Investors.

- ☐ (iv) The Investor is an *irrevocable* trust with total assets in excess of $5,000,000 whose acquisition is directed by a person with such knowledge and experience in financial and business matters that such person is capable of evaluating the merits and risks of the prospective investment.

- ☐ (v) The Investor is a bank, insurance company, investment company registered under the Investment Company Act, a broker or dealer registered pursuant to Section 15 of the United States Securities Exchange Act of 1934, as amended, a business development company, a Small Business Investment Company licensed by the United States Small Business Administration, a plan with total assets in excess of $5,000,000 established and maintained by a state for the benefit of its employees, or a private business development company as defined in Section 202(a)(22) of the Investment Advisers Act.

- ☐ (vi) The Investor cannot make any of the representations set forth in clauses (i) through (v) above.

**QUALIFIED CLIENT REPRESENTATION** (*check the box adjacent to at least one applicable representation below*):

☐ (i)  The Investor is a corporation, partnership, association, joint-stock company, trust, or any organized group of persons, whether incorporated or not, that has a net worth of more than $2,000,000. *If the Investor belongs to this investor category, please either check clause (iii) below, if applicable, or affirmatively deny the applicability of clause (iii) below.*

☒ (ii)  The Investor is a corporation, partnership, association, joint stock company, trust, or any organized group of persons, whether incorporated or not, that is a Qualified Purchaser. *If the Investor belongs to this investor category, please either check clause (iii) below, if applicable, or affirmatively deny the applicability of clause (iii) below.*

☐ (iii)  The Investor is a corporation, partnership, association, joint-stock company, trust, or any organized group of persons, whether incorporated or not, that is an Excluded Company, and all of the Investor's equity owners (and all of their respective equity owners) are Qualified Clients.

☒  The Investor has checked either or both of clauses (i) or (ii) above and affirmatively denies applicability of this clause (iii).

☐ (vi)  The Investor cannot make any of the representations set forth in clauses (i) through (iii) above.

**FURTHER ENTITY INVESTOR REPRESENTATIONS**

The Investor makes the following representations *by checking the box adjacent to the correct response to each representation below*:

☒ True  ☐ False   The Investor is **neither** an "investment company" under the Investment Company Act **nor** does the Investor rely upon the exclusions from the definition of "investment company" provided for in Section 3(c)(1) or 3(c)(7) of the Investment Company Act.

☐ True  ☒ False   The Investor was **not** organized for the purpose of acquiring the Interest.

☒ True  ☐ False   The Investor has made investments prior to the date hereof or intends to make investments in the near future and each beneficial owner of interests in the Investor has and will share in the same proportion to each such investment.

☐ True  ☒ False   The Investor's investment in the Company will **not** constitute more than 40% of the assets of the Investor (including any capital commitments that may be drawn upon demand by the Investor).

☒ True  ☐ False   The governing documents of the Investor require that each beneficial owner of the Investor, including, but not limited to, shareholders, partners and beneficiaries, participate through their interest in the Investor in all of the Investor's investments and that the profits and losses from each such investment are shared among such beneficial owners in the same proportions as all other investments of the Investor. No such beneficial owner may vary the Investor's share of the profits and losses or the amount of the Investor's contribution for any investment made by the Investor.

-2-

If any of the above statements are marked "False," then the Investor will have, as of the Closing Date, four (4) holders of its outstanding securities (other than short-term paper) (*please fill in the blank specifying the number of beneficial owners*).

The Investor is:

☐ True ■ False  (1)  an "employee welfare benefit plan" or an "employee pension benefit plan" as defined in sections 3(1) and 3(2), respectively, of ERISA; or

☐ True ■ False  (2)  a plan described in section 4975(e)(1) of the Code; or

☐ True ■ False  (3)  an entity that is deemed to be a "benefit plan investor" under the DOL Regulations because all or part of its underlying assets include "plan assets" by reason of a plan's investment in the entity (including, by way of example only, a partnership not qualifying as an operating company within the meaning of the DOL Regulations, which is 25% or more owned by entities described in (1) or (2) above); or

☐ True ■ False  (4)  subject to any rules or regulations similar to the fiduciary provisions of ERISA and/or the prohibited transaction provisions of Section 4975 of the Code.

If clause (3) above is marked "True," please provide the percentage that the Investor's "plan assets" holdings bear to its aggregate asset holdings (based upon value as of the Closing Date): _____% (the "Plan Asset Percentage").

☐ True ■ False    The Investor is a "private foundation" as described in Section 509 of the Code.

☐ True ■ False    The Investor is subject to the Bank Holding Company Act of 1956, as amended.

■ True ☐ False    To the best of the Investor's knowledge, the Investor does **not** control nor is it controlled by or under common control with, any other Investor.

*Please check the box next to each applicable statement and provide appropriate information in response to each such statement:*

☐ True ■ False    The Investor is subject to federal or state freedom of information (FOIA) statutes or other similar statutes in each of the following jurisdictions. (*If a similar statute is applicable, please specify the applicable statute along with the applicable jurisdiction, to the extent known)*:

_____

☐ True ■ False    One or more of the Investor's beneficial owners is subject to federal or state FOIA statutes or other similar statutes in each of the following jurisdictions. (*If a similar statute is applicable, please specify the applicable statute along with the applicable jurisdiction, to the extent known)*:

_____

-3-

☐ True  ■ False       The Investor is a public agency, department, office or pension plan. *(Please specify type and applicable jurisdiction.)*:

_____

☐ True  ■ False       One or more of the Investor's beneficial owners is a public agency, department, office or pension plan. *(If known, please specify type of owner and applicable jurisdiction below.)*:

_____